UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACIE ANN WILSON,

              Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

                                                /

Case No. No. 17-10979

District Judge Thomas L. Ludington

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

      Plaintiff Tracie Ann Wilson ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below, I recommend that the case be remanded to the administrative level for further proceedings under the sixth sentence of 42 U.S.C. 405(g), with this Court retaining jurisdiction.[1]  For the

---

[1] In contrast to a remand under the fourth sentence of § 405(g) when a court enters judgment at the time of the remand, a remand under the sixth sentence of the same subsection (in which the district court retains jurisdiction) "does not attach to any substantive ruling but merely remands the matter for further review in light of newly discovered evidence which is to be considered by the administrative law judge and therefore does not constitute a 'judgment' from which appeal can be taken." *Melkonyan v. Sullivan,* 501 U.S. 89, 97-99,

same reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #25] be DENIED.

## I. PROCEDURAL HISTORY

On December 23, 2013, Plaintiff filed an application for DIB, alleging disability as of December 12, 2013. *Docket #15* (Tr. 143). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on October 22, 2015 in Mount Pleasant, Michigan (Tr. 30). Administrative Law Judge ("ALJ") Patricia E. Hurt presided. Plaintiff, represented by Michael Hall, testified, as did Vocational Expert ("VE") Susan Lyon (Tr. 38-62, 62-78). On February 4, 2016, ALJ Hurt determined that Plaintiff was capable of performing her past relevant work as a bookkeeper (Tr. 22). On February 10, 2017, the Appeals Council declined to review the administrative decision (Tr. 1-5). Plaintiff filed suit in this Court on March 28, 2017.

---

111 S.Ct. 2157, 2163, 115 L.Ed.2d 78 (1991). The reviewing court does not grant summary judgment, but merely remands for further review. *Id*. The court "may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g)." *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993). However, the court retains jurisdiction in a Sentence Six remand, and enters final judgment only "after post-remand agency proceedings have been completed and their results filed with the court." *Shalala v. Schaefer*, 509 U.S. 292, 297, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993); *see also Melkonyan*, 501 U.S. at 98.

## II.  BACKGROUND FACTS

Plaintiff, born December 11, 1963, was 52 at the time of the administrative decision (Tr. 22, 143). She completed three years of college and received training as a medical administration specialist (Tr. 162). She alleges disability resulting from back, knee, and wrist problems (Tr. 161).

### A.  Plaintiff's Testimony

Plaintiff offered the following testimony:

She received vocational training while in high school, attended a community college for one year, and did a six-month online college course through Central Michigan University to learn medical billing and coding (Tr. 38). In 2015, she worked for three days in the "accounts payable" section of a corporation (Tr. 42). In 2014, she worked for three weeks as a handheld video operator (Tr. 42). In 2012, she worked at a community college for six weeks in the financial aid office (Tr. 41). She did not receive a certification as a medical administrative specialist due to a marital separation and divorce (Tr. 42-43). She was unable to continue performing the video operator position due to pain and lack of mobility (Tr. 44). A knee replacement surgery was scheduled for approximately six weeks after the hearing (Tr. 37, 44). She experienced depression but was unable to afford treatment (Tr. 44). She attended a support group through a domestic violence shelter (Tr. 45). She stopped taking psychotropic medications after experiencing side effects (Tr. 46). Her medication was limited to Tylenol 3 (Tr. 46).

Plaintiff experienced significant limitation due to neck, mid-back, and lower back problems (Tr. 47). She was unable to find a comfortable seated position (Tr. 47). The neck pain radiated into her arms and the lower back pain radiated into her legs and feet (Tr. 47-48). She was able to sit up to 10 minutes at a time in a padded chair, after which time she was required to lie down to relieve the back pain (Tr. 48). She was unable to stand for more than 10 minutes or walk for more than 300 feet without experiencing severe hip and knee pain (Tr. 49). She was unable to lift more than six pounds on an occasional basis due to wrist swelling (Tr. 49). She was unable to bend altogether due to pain from a ruptured disc (Tr. 49). She was able to reach on a limited basis (Tr. 50). She was unable to twist due to severe hip pain (Tr. 50).

Plaintiff had experienced severe depression for at least three decades after an assault and endured a 10-year abusive relationship resulting in her partner going to prison (Tr. 51). Although she had not been diagnosed with Post Traumatic Stress Disorder ("PTSD"), she believed that she experienced the condition (Tr. 51). At times, she became so depressed that she was unable to concentrate (Tr. 51).

Plaintiff typically retired at 11:00 p.m. but was unable to sleep for several hours (Tr. 51). She experienced sleep disturbances, loss of appetite, and low energy (Tr. 52). She had attempted suicide in December, 2011 (Tr. 52-53). She experienced problems concentrating, finishing tasks, and interacting with others (Tr. 53). She injured her back during a temporary job assignment (Tr. 53). She was limited to driving short distances and experienced

problems dressing due to back problems (Tr. 54-55). She was unable to engage in her former hobbies of riding horses, four wheeling, motorcycle riding, bicycling, swimming, canoeing, and boating (Tr. 55). She continued to take care of her dogs, grocery shop, and prepare meals (Tr. 59). She lived in a one-story house and had recently obtained health insurance through the Affordable Care Act (Tr. 61). She smoked one pack of cigarettes each day, but had been advised by her orthopedic surgeon that she should quit smoking before undergoing lumbar back surgery (Tr. 61).

### B. Medical Records[2]

#### 1. Treating Records Reviewed by the ALJ

In December, 2011, Plaintiff received hospital treatment after taking an overdose of Wellbutrin (Tr. 271). October, 2012 chiropractic records note Plaintiff's report of lower back pain with tingling, pain, and cramps in the lower left extremity since the previous July (Tr. 218). January, 2013 imaging studies of the lumbar spine show nerve root encroachment at L5-S1 (Tr. 244). In February, 2013, Plaintiff reported continued back pain (Tr. 301). Imaging studies of the cervical spine show moderate degenerative changes (Tr. 253, 316, 385, 442, 484). Studies of the lumbar spine show marked and increased disc space narrowing at L5-S1 since a May, 2009 study (Tr. 254, 315). June, 2013 physical treating

---

[2]Plaintiff's argument for remand rests solely on records submitted *after* the ALJ's February 4, 2016 findings. However, the Court has also reviewed the records considered by the ALJ in determining whether the newer evidence would be likely to change the non-disability determination,

records note a history of anxiety and depression (Tr. 291). Plaintiff declined laboratory testing due to financial constraints (Tr. 293). In October, 2013, Plaintiff reported modest improvements in her condition after undergoing chiropractic treatment (Tr. 231). Imaging studies of the left knee showed small joint effusion (Tr. 314). Patrick M. Morse, M.D.'s treating records from the following month note Plaintiff's report of right wrist, back, and bilateral knee pain (Tr. 334, 401). Clinical signs were positive for bilateral neurological abnormalities of the wrist (Tr. 334). Plaintiff elected to "hold off" on more aggressive treatment for the knee(s) (Tr. 334). In December, 2013, Plaintiff reported that the back and lower extremity pain were re-aggravated by her routine activities (Tr. 230).

A February, 2014 MRI of the lumbar spine showed a "moderate to large" disc bulge at L5-S1 (Tr. 362-363, 382-383, 439-440, 459-460, 481-482, 503-504). Treating records from the same month note back pain, anxiety, and depression (Tr. 495). July, 2014 treating records note worsening limitations resulting from a herniated disc and a diagnosis of depression (Tr. 456). In August, 2014, Plaintiff was prescribed physical therapy (Tr. 387). In September, 2014, Siva Sriharan, M.D. advised a course of conservative treatment before undergoing spinal fusion surgery (Tr. 375, 438, 479). An October, 2014 MRI of the lumbar spine was unchanged from the February, 2014 study (Tr. 371, 467). Plaintiff reported right wrist and right knee pain (Tr. 403). Dr. Morse aspirated the right knee without complications (Tr. 404, 409). The same month, John DiBella, M.D. noted that Plaintiff experienced "good relief" from a series of epidural injections (Tr. 396, 445, 487). The following month, an

EKG showed normal results (Tr. 416). December, 2014 records by T.C. Schermerhorn, M.D. note that Plaintiff had been advised by another source to undergo back surgery (Tr. 366). Plaintiff reported that physical therapy increased her back pain (Tr. 366). Dr. Schermerhorn declined to recommend surgery "in the absence of instability/hyper mobility, misalignment, infection, tumor or fracture" (Tr. 367). Plaintiff was prescribed physical therapy (Tr. 477). Dr. Morse's notes from the same month note that Plaintiff's hand and wrist problems were better following the removal of a gangliaon cyst (Tr. 411, 417).

A June, 2015 MRI of the thoracic spine showed severe degenerative changes with a kyphotic deformity of the thoracic spine (Tr. 506). An MRI of the cervical spine showed severe degenerative changes at C3-C4 and C4-C5 without stenosis or herniation (Tr. 507-508). Undated records by Dr. Morse note that Plaintiff was scheduled for a right total knee replacement on November 30[3] (Tr. 504).

## 2. Non-Treating Records Reviewed by the ALJ

In March, 2014, Paul D. Winkler, Psy.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's report of chronic back pain, anxiety, and depression (Tr. 343). She reported constant fatigue and the situational stressors of divorce, health problems, and financial limitations (Tr. 344). She reported one suicide attempt (Tr. 344). She reported that she was let go from a position in 2012 because she did not "fit in"

---

[3]The transcript index states that this record is a "radiology report" and was created on October 6, 2014. However, this record clearly refers to Plaintiff's November 30, *2015* knee surgery. *See Docket #23-1.*

(Tr. 344).

Dr. Winkler noted that Plaintiff was punctual with good grooming and hygiene (Tr. 345). She appeared physically unremarkable with a good thought process (Tr. 345). She exhibited a flat affect but good memory (Tr. 345). Dr. Winkler noted a guarded prognosis, noting that Plaintiff was limited primarily by her physical conditions (Tr. 347).

The same month, A. Neil Johnson, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of neck, back, wrist, and knee pain (Tr. 355). Plaintiff reported that she could walk one mile and stand for up to 15 minutes (Tr. 355). She reported the need for a railing when using stairs (Tr. 355). She denied the ability to climb a ladder or run (Tr. 355). Dr. Johnson noted an anxious and flat affect (Tr. 356). Plaintiff exhibited mild limitation in dorsal-lumbar range of motion and reduced grip strength on the right (Tr. 357, 359). Dr. Johnson noted that a recent MRI showed abnormalities at L5-S1 (Tr. 359).

The following month, Larry Irey, Ph.D. performed a non-examining review of the records related to Plaintiff's psychological condition, concluding that she experienced only mild limitation in activities of daily living and social functioning and no limitation in concentration, persistence, or pace (Tr. 87). The same month, Saada Abbas, M.D. performed a non-examining assessment of the physical limitations, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 89). Dr. Abbas limited Plaintiff to

occasional postural activity but found no manipulative, visual, communicative, or environmental limitation (Tr. 89).

### 3. Records Submitted After the ALJ's February 4, 2016 Decision[4]

Dr. Morse's September, 2015 records note Plaintiff's report of chronic bilateral knee pain (worse on right) upon prolonged standing or walking. *Docket #23-1,* pgs. 3, 7 of 16, Pg ID 1108. Plaintiff underwent a right total knee arthroplasty on November 30, 2015 due to "severe osteoarthritis." *Id.* at pg. 1 of 16. She was prescribed a walker for post-surgical use and visits from a visiting physical therapist. *Id.* at 3 of 16.

Dr. Jagannathan's November, 2015 records state that Plaintiff engaged in physical therapy and pain management for back and lower extremity pain "without substantive relief" (Tr. 514). On February 4, 2016, Plaintiff underwent surgery for the repair of a compression fracture at T-10 (kyphplasty) (Tr. 516). Dr. Jagannathan noted that Plaintiff elected to undergo surgery "due to the failure of conservative measures" (Tr. 516). Two weeks following the kyphoplasty, Plaintiff reported continued lower back and leg pain (Tr. 519). The same month, Dr. Morse, urged Plaintiff to continue to attend physical therapy for the knee condition. *Docket #23-1* at pg. 14 of 16.

A March, 2016 MRI of the lumbar spine shows "borderline" spinal stenosis at L4-L5 and moderate herniation abutting the left nerve root at L5-S1 (Tr. 530). April, 2016 followup treatment records from the kyphoplasty note an improvement in thoracic pain, but continued

---

[4]Records duplicating those reviewed by the ALJ are omitted from discussion.

lower back pain with lower extremity radiculopathy due to "complete disc space collapse" at L5-S1 (Tr. 521). Dr. Jagannathan noted that Plaintiff treated the lower back condition with injections and physical therapy (Tr. 521). The following month, Dr. Jagannathan composed a letter on Plaintiff's behalf, stating that she would be unable to attend jury duty due to back surgery scheduled for May 20, 2016(Tr. 510). He noted that Plaintiff would require a three-month recovery period

### C. Vocational Testimony

VE Lyon classified Plaintiff's past work as a bookkeeper as skilled and sedentary; financial aid position, semiskilled/light; and accounting clerk, skilled/sedentary[5] (Tr. 68). The ALJ found that only the bookkeeper position qualified as "past relevant work" (Tr. 70). The VE testified that the bookkeeper position had transferable skills to the position of bookkeeper/accounting clerk, timekeeping and payroll clerk, and personnel clerk (semiskilled/sedentary) (Tr. 71). ALJ Hurt then posed the following set of limitations to the VE, describing a hypothetical individual of Plaintiff's age, educational level, and work

---

[5] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

history:

> [A] limited range of light work, with the following additional restrictions. This person can stand or walk two hours out of an eight-hour day, and sit six hours out of an eight-hour day with the option of sitting or standing, for example, at a position that could be performed at a bench or table. This person can occasionally climb stairs and ramps, never climb ladders and scaffolds. Occasionally balance, occasionally stoop, never kneel, occasionally crouch and never crawl. This person can occasionally be exposed to excessive vibration, and . . . frequent fumes, dust, smoke and environment pollutants. Should never be engaged in commercial driving defined as driving that requires a commercial driver's license. And never be exposed to hazards such as unprotected heights or uncovered industrial machinery. This person can have frequent interaction with the general public. With those limitations, would the hypothetical individual be able to perform the claimant's past relevant work? (Tr. 71-72).

The VE testified that a sit/stand "at will" option would preclude all of the past relevant work but that a sit/stand option allowing standing and stretching for five minutes at a time would allow the individual to do Plaintiff's past relevant work (Tr. 73). The VE found that the above-stated restrictions, coupled with the five-minute sit/stand option would also allow for the unskilled, exertionally light work of a cashier (280,000 positions in the national economy); bench assembler (94,000); and packager (61,000) (Tr. 74).

The VE stated that if the same individual were limited to sedentary work with only frequent interaction with co-workers and only occasional interaction with the general public, the individual would be unable to perform any of the past relevant work but could perform the sedentary, unskilled work of a assembler (42,000); bench packer (23,000); and surveillance system monitor (17,000) (Tr. 76). In response to questioning by Plaintiff's attorney, the VE testified that the need to recline intermittently over the course of the

workday would preclude all gainful employment (Tr. 77).

### D. The ALJ's Determination

Citing the medical transcript, ALJ Hurt found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical, thoracic, and lumbar spine; arthritis of the bilateral knees; and arthritis of the right wrist" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16, 18). She found that the conditions of trigger finger, anxiety, and depression were not severe impairments (Tr. 17). ALJ Hurt determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [S]he can stand and walk for two hours in an eight-hour day. She should be allowed to stand and stretch for five minutes at a time, so long as she remains on task. She can occasionally climb stairs and ramps, balance, stoop, and crouch. She cannot climb ladders or scaffolds, kneel, or crawl. She can occasionally be exposed to excessive vibrations, and she can frequently be exposed to fumes, dusts, smoke, and environmental pollutants. She cannot engage in commercial driving, defined as driving that requires a commercial drivers' license. She cannot work around hazards, such as unprotected heights and uncovered machinery. She can frequently interact with the public (Tr. 19).

Citing the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a bookkeeper "as actually and generally performed [in the national economy]" as well as the unskilled work of a cashier, assembler, and packager (Tr. 22-23, 73-74).

The ALJ discounted Plaintiff's alleged degree of physical limitation, noting that physical examinations were "largely normal" (Tr. 21). She observed that Plaintiff was able to care for her personal needs, perform light chores, and drive (Tr. 21). The ALJ noted that while Plaintiff claimed that her treating sources recommended back surgery, "the evidence shows that they ultimately determined that surgery was not necessary" (Tr. 21). She concluded that Plaintiff's "sporadic and conservative treatment," coupled with the ability "to perform a wide variety of daily tasks," undermined the allegations of disability (Tr. 21).

### III.   STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative

record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V.  ANALYSIS

### Evidence Submitted After the ALJ's February 4, 2016 Determination

Plaintiff argues that the material submitted to the Appeals Council after February 4, 2016 (Tr. 509-531) and evidence attached to her summary judgment motion provides grounds for a "Sentence Six" remand. *Plaintiff's Brief, Docket #23,* 3-7, Pg ID 1100.  In response, Defendant Commissioner ("Defendant") submits that the newer evidence (1) would not be likely to change the ALJ's determination, and, (2) that Plaintiff has not shown "good cause" for its tardy submission. *Defendant's Brief* at 5-12, *Docket #25,* Pg ID 1132.

The question of whether the newer material constitutes grounds for a remand is analyzed under the sixth sentence of 42 U.S.C. § 405(g).  "New" evidence is evidence which did not exist or was unavailable at the time of the hearing. *Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990).  Under the same, records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993).  To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ... " § 405(g).  To satisfy the "materiality" requirement for a Sentence Six remand, a claimant "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence" *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988).

The newer records, summarized above at II.B.3. can be divided as follows: (1) records created before the February 4, 2016 administrative decision (evidence pertaining to Plaintiff's November 30, 2015 right knee surgery) and, (2) those created on or after the date of the decision (evidence pertaining to Plaintiff's February 4, 2016 kyphoplasty and May, 2016 reference to upcoming lumbar spine surgery).

Plaintiff cannot show good cause for the failure provide the November, 2015 knee surgery records prior to the February, 2016 decision. On May 18, 2016, Plaintiff informed the Appeals Council that her former attorney failed to respond to either the ALJ's October 29, 2015 letter informing him that he had until December 1, 2015 to either submit additional evidence or request an extension of time (Tr. 211). She noted that her attorney likewise failed to respond to ALJ's November 24, 2015 followup notice that the record would be closed on December 1 (Tr. 212, 214). Plaintiff states that after receiving the February 4, 2016 determination, the former attorney refused her request for her records (Tr. 214). Plaintiff's contention that her attorney was to blame for failing to provide the updated information, standing alone, does not satisfy the "good cause" requirement for Sentence Six remand. *See Taylor v. Comm'r of Soc. Sec.,* 43 F. App'x 941, 943 (6th Cir.2002)("absolutely no statutory or decisional authority" to support the plaintiff's argument that her former attorney's incompetence constitutes good cause); *Gropp v. Astrue*, 2009 WL 5103619, at *4 (W.D.Ky. Dec. 15, 2009)( fact that "previous counsel 'dropped the ball,'" does not provide good cause "for the failure to submit the evidence prior to the ALJ's decision").

Even assuming that Plaintiff cannot show good cause for the records related to the November 15, 2015 knee surgery, the fact that Plaintiff did not undergo kyphoplasty until the same day as the administrative determination was issued (February 4, 2016) constitutes "good cause" for the failure to timely present the operative notes and followup treatment from the later surgery. *See Street v. Commissioner of Social Security*, 390 F.Supp.2d 630, 641 (E.D.Mich. 2005)(that latter-submitted records were not created until after the administrative determination constitutes "good cause" for their tardy submission). While Defendant argues that Plaintiff ought to have requested an extension of time to submit evidence prior to the February 4, 2016 surgery, the actual surgical report, at the earliest, would have been created after both the surgery and discharge of February 4. The final report attached to Plaintiff's brief was likely not available to her until sometime after her same-day discharge. *Docket #23-2*.[6]

---

[6] Although Plaintiff cannot show good cause for the failure to provide the November, 2015 knee surgery records, I find that these records are "material" to the ALJ determination. The ALJ, unaware that Plaintiff actually underwent knee surgery after the administrative hearing but before the decision was issued, remarked that "there is no indication that the surgery took place," and discounted the allegations of disability based on her belief that Plaintiff's care had been exclusively conservative (Tr. 21). These records do not themselves form the basis for a remand due to the lack of "good cause." Nonetheless, because Plaintiff has shown both good cause and the materiality of the records related to the February, 2066 surgery, the ALJ may also consider the earlier knee surgery records upon remand.

The records related to Plaintiff's February 4, 2016 surgery also satisfy the materiality requirement for a Sentence Six remand. First, the pre-surgical records show that back problems began during the period prior to the administrative decision and are therefore relevant to the February 4, 2016 determination. Second, the newer records undermine the ALJ's rationale for discounting Plaintiff's allegations of disabling limitation. In making the credibility determination, the ALJ found in pertinent part as follows: (1) examination records showed mostly unremarkable findings, (2) Plaintiff's care consisted of intermittent specialist visits and a short series of injections, (3) the evidence showed that back surgery was not necessary, (4) Plaintiff was capable of performing a significant range of daily activities, (5) Plaintiff told a consultative examiner in March, 2014 that she could walk one mile, and, (6) Plaintiff's treatment had been exclusively "sporadic and conservative"(Tr. 21). Standing alone, the records created from February, 2016 forward cast doubt and/or invalidate the ALJ's second, third, and sixth reasons for rejecting Plaintiff's allegations of limitation.

Defendant argues that the ALJ "did not solely rely" on her belief that the treatment was strictly conservative and intermittent. *Defendant's Brief* at 6. However, the issue is not whether "substantial evidence" otherwise supports the credibility determination but rather, whether the new evidence would be like to change the non-disability determination. The newer evidence contradicts half of the ALJ's reasons for finding Plaintiff not credible. It cannot be assumed that the ALJ would accord the same weight to Plaintiff's regular activities absent her now disproven finding that Plaintiff had exclusively conservative care for the

relevant period.  *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003)(responsibility of the ALJ, not the Court, to weigh the evidence).  Because evidence showing Plaintiff underwent aggressive treatment stands at odds with the ALJ's finding that the treatment was exclusively conservative, there is a reasonable likelihood that she would have ruled differently in light of the newer evidence.

Plaintiff has established both the materiality of the February, 2016 back surgery records and has shown good cause for their tardy submission.  Accordingly, I recommend that the case be remanded to the administrative level pursuant to the sixth sentence of 42 U.S.C. 405(g), with this Court retaining jurisdiction.

## VI.   CONCLUSION

For these reasons, I recommend that the case be remanded to the administrative level for further proceedings under the sixth sentence of 42 U.S.C. 405(g), with this Court retaining jurisdiction.

I further recommend that Defendant's Motion for Summary Judgment [Docket #25] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 18, 2018                    s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify on July 18, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 18, 2018.

                                        s/Carolyn M. Ciesla
                                        Case Manager for the
                                        Honorable R. Steven Whalen