UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TRACIE ANN WILSON,

                Plaintiff,                          Case No. 17-10979

v                                                  Honorable Thomas L. Ludington

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____/

**ORDER REJECTING REPORT AND RECOMMENDATION, SUSTAINING OBJECTIONS, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND AFFIRMING THE DECISION OF THE COMMISSIONER**

On July 18, 2018, Magistrate Judge R. Steven Whalen issued a Report and Recommendation, ECF No. 26, on Plaintiff Tracie Ann Wilson's motion for summary judgment and Defendant Commissioner of Social Security's motion for summary judgment. ECF Nos. 23, 25. In the report, Judge Whalen recommends denying the Defendant Commissioner's motion for summary judgment and remanding the case to the administrative level for further proceedings under the sixth sentence of 42 U.S.C. 405(g). On July 20, 2018, the Defendant Commissioner timely filed an objection. ECF No. 27.

Pursuant to a de novo review of the record, the Defendant Commissioner's objection will be sustained and the report and recommendation will be rejected. Accordingly, Plaintiff Wilson's motion for summary judgment will be denied, Defendant Commissioner's motion for summary judgment will be granted, and Plaintiff Wilson's claims will be dismissed with prejudice.

**I.**

Neither party has objected to Judge Whalen's summary of the relevant background of the case. For that reason, large portions of that factual summary will be reproduced here.

Plaintiff, born December 11, 1963, was 52 at the time of the administrative decision (Tr. 22, 143). She completed three years of college and received training as a medical administration specialist (Tr. 162). She alleges disability resulting from back, knee, and wrist problems (Tr. 161).

**A.**

Plaintiff offered the following testimony: She received vocational training while in high school, attended a community college for one year, and did a six-month online college course through Central Michigan University to learn medical billing and coding (Tr. 38). In 2015, she worked for three days in the "accounts payable" section of a corporation (Tr. 42). In 2014, she worked for three weeks as a handheld video operator (Tr. 42). In 2012, she worked at a community college for six weeks in the financial aid office (Tr. 41). She did not receive a certification as a medical administrative specialist due to a marital separation and divorce (Tr. 42-43). She was unable to continue performing the video operator position due to pain and lack of mobility (Tr. 44). A knee replacement surgery was scheduled for approximately six weeks after the hearing (Tr. 37, 44).

Plaintiff experienced significant limitation due to neck, mid-back, and lower back problems (Tr. 47). She was unable to find a comfortable seated position (Tr. 47). The neck pain radiated into her arms and the lower back pain radiated into her legs and feet (Tr. 47–48). She was able to sit up to 10 minutes at a time in a padded chair, after which time she was required to lie down to relieve the back pain (Tr. 48). She was unable to stand for more than 10 minutes or walk for more than 300 feet without experiencing severe hip and knee pain (Tr. 49). She was unable to lift more than six pounds on an occasional basis due to wrist swelling (Tr. 49). She was unable to bend altogether due to pain from a ruptured disc (Tr. 49). She was able to reach on a limited basis (Tr. 50). She was unable to twist due to severe hip pain (Tr. 50).

Plaintiff declined laboratory testing due to financial constraints (Tr. 293). In October, 2013, Plaintiff reported modest improvements in her condition after undergoing chiropractic treatment (Tr. 231). Imaging studies of the left knee showed small joint effusion (Tr. 314). Patrick M. Morse, M.D.'s treating records from the following month note Plaintiff's report of right wrist, back, and bilateral knee pain (Tr. 334, 401). Clinical signs were positive for bilateral neurological abnormalities of the wrist (Tr. 334). Plaintiff elected to "hold off" on more aggressive treatment for her knees (Tr. 334). In December 2013, Plaintiff reported that the back and lower extremity pain were re-aggravated by her routine activities (Tr. 230).

A February 2014 MRI of the lumbar spine showed a "moderate to large" disc bulge at L5-S1 (Tr. 362-363, 382-383, 439-440, 459-460, 481-482, 503-504). Treating records from the same month note back pain, anxiety, and depression (Tr. 495). July 2014 treating records note worsening limitations resulting from a herniated disc and a diagnosis of depression (Tr. 456). In August 2014, Plaintiff was prescribed physical therapy (Tr. 387). In September, 2014, Siva Sriharan, M.D. advised a course of conservative treatment before undergoing spinal fusion surgery (Tr. 375, 438, 479). An October 2014 MRI of the lumbar spine was unchanged from the February 2014 study (Tr. 371, 467). Plaintiff reported right wrist and right knee pain (Tr. 403). Dr. Morse aspirated the right knee without complications (Tr. 404, 409). The same month, John DiBella, M.D. noted that Plaintiff experienced "good relief" from a series of epidural injections (Tr. 396, 445, 487). The following month, an EKG showed normal results (Tr. 416). December 2014 records by T.C. Schermerhorn, M.D. note that Plaintiff had been advised by another source to undergo back surgery (Tr. 366). Plaintiff reported that physical therapy increased her back pain (Tr. 366). Dr. Schermerhorn declined to recommend surgery "in the absence of instability/hyper mobility, misalignment, infection, tumor or fracture" (Tr. 367). Plaintiff was prescribed physical therapy

(Tr. 477). Dr. Morse's notes from the same month note that Plaintiff's hand and wrist problems were better following the removal of a gangliaon cyst (Tr. 411, 417).

A June 2015 MRI of the thoracic spine showed severe degenerative changes with a kyphotic deformity of the thoracic spine (Tr. 506). An MRI of the cervical spine showed severe degenerative changes at C3-C4 and C4-C5 without stenosis or herniation (Tr. 507- 508). Undated records by Dr. Morse note that Plaintiff was scheduled for a right total knee replacement on November 30, 2015 (Tr. 504).

**2.**

In March, 2014, A. Neil Johnson, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report of neck, back, wrist, and knee pain (Tr. 355). Plaintiff reported that she could walk one mile and stand for up to 15 minutes (Tr. 355). She reported the need for a railing when using stairs (Tr. 355). She denied the ability to climb a ladder or run (Tr. 355). Dr. Johnson noted an anxious and flat affect (Tr. 356). Plaintiff exhibited mild limitation in dorsal-lumbar range of motion and reduced grip strength on the right (Tr. 357, 359). Dr. Johnson noted that a recent MRI showed abnormalities at L5-S1 (Tr. 359).

The following month, Larry Irey, Ph.D. performed a non-examining review of the records related to Plaintiff's psychological condition, concluding that she experienced only mild limitation in activities of daily living and social functioning and no limitation in concentration, persistence, or pace (Tr. 87). The same month, Saada Abbas, M.D. performed a non-examining assessment of the physical limitations, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for about six hours in an eight-hour workday; and push and pull without limitation (Tr. 89). Dr. Abbas limited Plaintiff to occasional postural activity, but found no manipulative, visual, communicative, or environmental limitation (Tr. 89).

**3.**

Dr. Morse's September 2015 records note Plaintiff's report of chronic bilateral knee pain (worse on right) upon prolonged standing or walking. Docket #23-1, pgs. 3, 7 of 16, Pg ID 1108. Plaintiff underwent a right total knee arthroplasty on November 30, 2015 due to "severe osteoarthritis." Id. at pg. 1 of 16. She was prescribed a walker for post-surgical use and visits from a visiting physical therapist. *Id.* at 3 of 16.

Dr. Jagannathan's November 25, 2015 records state that Plaintiff engaged in physical therapy and pain management for back and lower extremity pain "without substantive relief" (Tr. 514). On February 4, 2016, Plaintiff underwent surgery for the repair of a compression fracture at T-10 (kyphoplasty) (Tr. 516). Dr. Jagannathan noted that Plaintiff elected to undergo surgery "due to the failure of conservative measures" (Tr. 516). Two weeks following the kyphoplasty, Plaintiff reported continued lower back and leg pain (Tr. 519). The same month, Dr. Morse, urged Plaintiff to continue to attend physical therapy for the knee condition. Docket #23-1 at pg. 14 of 16.

A March 2016 MRI of the lumbar spine shows "borderline" spinal stenosis at L4-L5 and moderate herniation abutting the left nerve root at L5-S1 (Tr. 530). April 2016 treatment records from the kyphoplasty note an improvement in thoracic pain, but continued lower back pain with lower extremity radiculopathy due to "complete disc space collapse" at L5-S1 (Tr. 521). Dr. Jagannathan noted that Plaintiff treated the lower back condition with injections and physical therapy (Tr. 521). The following month, Dr. Jagannathan composed a letter on Plaintiff's behalf, stating that she would be unable to attend jury duty due to back surgery scheduled for May 20, 2016 (Tr. 510). He noted that Plaintiff would require a three month recovery period.

**D.**

On October 22, 2015, ALJ Hurt held a hearing because Plaintiff disagreed with the Social Security Agency's prior determination that she was not disabled (Tr. 33). At the conclusion of the hearing, ALJ Hurt agreed to keep the record open until December 1, 2015 to allow Plaintiff to submit additional evidence (Tr. 79–80). On October 29, 2015, ALJ Hurt sent Plaintiff a letter reminding her that she could submit additional evidence until December 1, 2015 (Tr. 211). She also stated that she would not grant an extension to the deadline unless Plaintiff provided a good reason for her to do so. *Id.* On November 24, 2015, ALJ Hurt sent Plaintiff another letter stating that ALJ Hurt had not received any additional evidence from her and that she could submit evidence until December 1, 2015 (Tr. 212). She again mentioned the option for Plaintiff to request more time to submit the evidence. *See id.* Plaintiff did not submit any additional evidence prior to the December 1, 2015 deadline (Tr. 214).

On February 4, 2016, ALJ Hurt found that Plaintiff experienced the severe impairments of "degenerative disc disease of the cervical, thoracic, and lumbar spine; arthritis of the bilateral knees; and arthritis of the right wrist" but that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 16, 18). She found that the conditions of trigger finger, anxiety, and depression were not severe impairments (Tr. 17). ALJ Hurt determined that Plaintiff had an RFC for light work with the following additional restrictions:

> [S]he can stand and walk for two hours in an eight-hour day. She should be allowed to stand and stretch for five minutes at a time, so long as she remains on task. She can occasionally climb stairs and ramps, balance, stoop, and crouch. She cannot climb ladders or scaffolds, kneel, or crawl. She can occasionally be exposed to excessive vibrations, and she can frequently be exposed to fumes, dusts, smoke, and environmental pollutants. She cannot engage in commercial driving, defined as driving that requires a commercial drivers' license. She cannot work around hazards, such as unprotected heights and uncovered machinery. She can frequently interact with the public (Tr. 19).

ALJ Hurt determined that Plaintiff could perform her past relevant work as a bookkeeper "as actually and generally performed [in the national economy]" as well as the unskilled work of a cashier, assembler, and packager (Tr. 22-23, 73-74). The ALJ discounted Plaintiff's alleged degree of physical limitation, noting that physical examinations were "largely normal" (Tr. 21). She observed that Plaintiff was able to care for her personal needs, perform light chores, and drive (Tr. 21). The ALJ noted that while Plaintiff claimed that her treating sources recommended back surgery, "the evidence shows that they ultimately determined that surgery was not necessary" (Tr. 21). She concluded that Plaintiff's "sporadic and conservative treatment," coupled with the ability "to perform a wide variety of daily tasks," undermined the allegations of disability (Tr. 21).

## II.

When reviewing a case under 42 U.S.C. § 405(g), the Court must affirm the Commissioner's conclusions "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

### A.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the

basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "The parties have the duty to pinpoint those portions of the magistrate's report that the district court must specially consider." *Id.* (internal quotation marks and citation omitted). A general objection, or one that merely restates the arguments previously presented, does not sufficiently identify alleged errors on the part of the magistrate judge. *See VanDiver v. Martin*, 304 F.Supp.2d 934, 937 (E.D.Mich.2004). An "objection" that does nothing more than disagree with a magistrate judge's determination, "without explaining the source of the error," is not considered a valid objection. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Without specific objections, "[t]he functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id*.

**B.**

If a party is dissatisfied by a Social Security Administration decision, the party may request a hearing before an ALJ. 20 C.F.R. §404.929. The subsequent decision by the ALJ is final and binding upon the parties to the hearing unless a party appeals the decision to the Appeals Council. 20 C.F.R. §404.955. If the Appeals Council denies review, the party may file a civil action in a Federal district court. *Id.* The party also has the option of filing a new claim.

When a district court reviews an ALJ decision, it must constrain its analysis to the evidence that was before the ALJ. However, when the claimant possesses new evidence, the sixth sentence of 42 U.S.C. 405(g) permits the district court to remand the case to the ALJ to reconsider the claim in light of the new evidence. 42 U.S.C. 405(g). The Supreme Court has stated:

> The district court does not affirm, modify, or reverse the Secretary's decision; it does not rule in any way as to the correctness of the administrative determination. Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding.

*Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Under the sixth-sentence remand analysis, the claimant must demonstrate that "(1) new material evidence is available and (2) good cause is shown for failure to incorporate such evidence into the prior proceeding." *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984).

It is important to emphasize that a sixth-sentence remand does not grant a claimant the opportunity to bring a new claim. Nor does it preclude a claimant from bringing a separate claim based upon the new evidence. Rather, it is intended to expedite legal proceedings when there is new evidence relevant to an existing claim. When an ALJ concludes their proceedings, they must be assured that the subsequent reviewing court will not consider evidence that should have been presented previously. For this reason, the sixth-sentence remand is an exacting standard that creates only a narrow exception for a particular category of new evidence. The claimant must prove that the new evidence is material and that the claimant has good cause for not submitting it to the ALJ.

## C.

The new evidence at issue in this case is evidence of Wilson's right knee surgery and her back surgery for the repair of a compression fracture at T-10 ("kyphoplasty"). Judge Whalen determined that Wilson lacked good cause for failing to present evidence of her knee surgery to

the ALJ, but that she had good cause for failing to present evidence of her kyphoplasty. ECF No. 26 at 15–17. He found that evidence of the kyphoplasty was material to ALJ Hurt's determination and therefore recommended that the case be remanded to the ALJ. *Id.* at 19. He also recommended that evidence of the knee surgery be considered by the ALJ since she would be considering the new evidence of the kyphoplasty. *Id.* at 17, n. 6.

The Commissioner argues that Judge Whalen erred in finding that Wilson had good cause for failing to submit evidence of her kyphoplasty to ALJ Hurt and that the evidence was not material. Neither party objects to Judge Whalen's recommendation that Wilson lacked good cause for failing to submit evidence of her knee surgery to ALJ Hurt. For this reason, only the evidence of the kyphoplasty will be addressed.

To establish good cause, a claimant must provide "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This includes identifying "the obstacles that prevented him from entering the evidence in a timely manner." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). The Sixth Circuit has further held that

> The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement. This Court takes 'a harder line on the good cause test' with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.'

*Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th Cir. 2012) (quoting *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

Judge Whalen determined that Wilson had demonstrated good cause for failing to present evidence of her kyphoplasty because the kyphoplasty did not occur until the same day that ALJ Hurt released her decision. ECF No. 26 at 17. However, as stated above, the fact that evidence is not in existence at the time of a prior proceeding is not enough to demonstrate good cause. Judge

Whalen provides no other reasoning as to why Wilson had demonstrated good cause for her failure to include evidence of the kyphoplasty to ALJ Hurt.

Nor has Wilson provided any satisfactory reason demonstrating good cause, even though it is her burden as the claimant to do so. *Oliver v. Sec'y of Health & Human Serv.*, 804 F.2d 964, 966 (6th Cir. 1986) (holding that in a Social Security sentence-six claim, the burden is upon the claimant to prove good cause for her failure to present the evidence during the prior proceeding). In Wilson's motion for summary judgment, she does not articulate how she meets the good cause standard. She appears to allude to it by arguing that her surgeries occurred around the same time as the ALJ proceedings and thus could not be submitted to ALJ Hurt prior to the close of proceedings. Pl.'s Mot. for Summ. J., ECF No. 23 at 6 ("It…appears that the evidence could not be submitted before the ALJ issued her decision."). However, as explained above, the mere fact that the evidence did not exist at the time of proceeding is inadequate. Wilson must provide more to demonstrate good cause.

In her reply, Wilson does more to articulate her good cause argument, but still falls short. ECF No. 29 at 2–5. Wilson argues that she had good cause for not submitting evidence of her surgeries that occurred after the close of ALJ proceedings "due to her complicated medical case with 'severe' Arthritis in her Right Knee, a Compression Fracture in her Thoracic Spine and a Herniated Disc in her Lumbar Spine." *Id.* at 5. However, she does not explain how these surgeries prevented her from submitting evidence of her need for a kyphoplasty to ALJ Hurt.

Most importantly, Wilson neglects to address the fact that prior to ALJ Hurt's evidence submission deadline, she had evidence of her need to receive a kyphoplasty. ALJ Hurt held Wilson's hearing on October 22, 2015 and stated that she would hold the record open for additional evidence until December 1, 2015. ECF No. 15-2 at 30, 80. On October 29, 2015, ALJ Hurt sent

Wilson a letter reminding her that she could submit additional evidence until December 1, 2015. *Id.* at 11. She also stated that she would not grant an extension to the deadline unless Wilson provided a good reason for her to do so. *Id.* On November 24, 2015, ALJ Hurt sent Wilson another letter stating that ALJ Hurt had not received any additional evidence from her and that she could submit evidence until December 1, 2015. *Id.* at 212. She again mentioned the option for Wilson to request more time to submit the evidence. *Id.* On November 25, 2015, Dr. Jagannathan examined Wilson and "recommended thoracic spine kyphoplasty." Pl.'s Mot. for Summ. J., ECF No. 23 at 5; ECF No. 15-10 at 514–515. This exam occurred six days prior to the evidence submission deadline.

As of December 1, 2015, ALJ Hurt had not received any additional evidence regarding Wilson's case, including Dr. Jagannathan's report recommending the kyphoplasty. ECF No. 15-10 at 214. Had Wilson submitted Dr. Jagannathan's report, it would have informed ALJ Hurt that Wilson required back surgery and ALJ Hurt could have considered this information when making her decision. Additionally, Wilson had the option of requesting an extension to the evidence submission deadline. This extension potentially would have provided Wilson the time necessary to schedule the kyphoplasty and enter proof of it into evidence. Wilson provided none of this and ALJ Hurt was never informed of Dr. Jagannathan's recommendation. The kyphoplasty occurred the same day ALJ Hurt released her decision. However, Wilson could have submitted Dr. Jagannathan's report prior to the evidence submission deadline and put ALJ Hurt on notice of her need to receive a kyphoplasty.

Wilson claims that her attorney at the time, Michael Hall, failed to submit the additional evidence to ALJ Hurt, despite Wilson's attempts to contact Hall about it. *Id.* However, a counsel's failure to present evidence does not constitute good cause for purposes of a sixth-sentence remand.

ECF No. 26 at 16; *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002) (holding that an attorney's incompetence and subsequent failure to submit evidence did not constitute good cause); *Gropp v. Astrue*, 2009 WL 5103619, at *4 (W.D.Ky. Dec. 15, 2009) (holding that the fact that previous counsel "dropped the ball" did not constitute good cause). Thus, Wilson cannot demonstrate good cause due to Hall's failure to submit the evidence.

In her reply, Wilson notes that Dr. Jagannathan's November 25, 2015 exam occurred one month after the ALJ hearing. However, the date of the hearing is not the significant date, but rather the date ALJ Hurt closed the record. The sixth sentence of 42 U.S.C. 405(g) states that there must be "good cause for the failure to incorporate such evidence into the *record* in a prior proceeding." (emphasis added). During the October 22, 2015 hearing, ALJ Hurt stated that, "The record will remain open for additional evidence until December 1st." ECF No. 15-2 at 80. It is irrelevant that Dr. Jagannathan's report did not exist at the time of the hearing. It existed prior to December 1 and thus, Wilson could have entered it into the record.

Wilson had the opportunity to submit evidence of Dr. Jagannathan's recommendation that she receive a kyphoplasty. She did not take this opportunity and therefore cannot demonstrate good cause for failing to submit evidence of the kyphoplasty to ALJ Hurt. She will not be permitted to shoehorn in evidence of the February 4, 2016 kyphoplasty procedure when she had the opportunity to present similar evidence prior to the evidence submission deadline and failed to do so.

Under a sixth-sentence remand, the claimant must demonstrate that they had good cause for failing to present the new evidence at a prior proceeding and that the evidence was material. *Willis v. Sec'y of Health and Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984). Since Wilson has not proven that she had good cause for failing to present the evidence, there is no need to determine whether the evidence was material.

**III.**

Accordingly, it is **ORDERED** that Defendant Commissioner's objections to the report and recommendation, ECF No. 27, are **SUSTAINED**.

It is further **ORDERED** that the report and recommendation, ECF No. 26, is **REJECTED**.

It is further **ORDERED** that Plaintiff Wilson's motion for summary judgment, ECF No. 23, is **DENIED**.

It is further **ORDERED** that Defendant Commissioner's motion for summary judgment, ECF No. 25, is **GRANTED**.

It is further **ORDERED** that the Commission of Social Security's decision is **AFFIRMED**.

Dated: September 27, 2018
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 27, 2018.

s/Kelly Winslow
KELLY WINSLOW, Case Manager